Leonard P. Cervantes MO #25043
Phillip A. Cervantes MO #44742
Jennifer Suttmoeller MO #49910
Cervantes & Associates
1007 Olive Street, 4th Floor
St. Louis, MO 63101
(314) 621-6558
Fax (314) 621-6705
E-Mail: jenny_suttmoeller@sbcglobal.net
Attorneys for Plaintiff Nicole Shaw

FILED
JAMES J. WALDRICH CLERK
AUG 28 2006
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 05-35692-NLW |
| N.V.E., INC., | Chapter 11 |
| Debtor. | |
| NICOLE SHAW, | |
| Plaintiff, | Adv. No. _____ |
| vs. | |
| NVE, INC. a/k/a NVE Pharmaceuticals, Inc., JIM STRICKLIN d/b/a STRICKLIN C STORE, and CB DISTRIBUTORS, INC. | JURY DEMAND |
| Defendants. | |

### ADVERSARY COMPLAINT

COMES NOW Plaintiff Nicole Shaw and for her Complaint states as follows:

### I.    INTRODUCTION

1.   This is an action against Defendants on behalf of Plaintiff Nicole Shaw who ingested several capsules of a product called "Stacker 2" and suffered injury. This action seeks,

among other relief, compensatory and punitive damages for Plaintiff who suffered the dangerous, severe and life-threatening adverse effects of "Stacker 2" including a stroke.

2. This case involves the over-the-counter dietary supplement/mediation, "Stacker 2," marketed as a dietary supplement for weight loss and for extreme boost in energy. The dietary supplement was manufactured, sold, distributed and/or promoted by Defendant NVE who misrepresented that "Stacker 2" was a safe and effective dietary supplement for weight loss and energy enhancement when in fact its effectiveness was unsubstantiated. "Stacker 2" contains ephedra and caffeine as its primary ingredients, which have caused serious side effects and deaths from complications including strokes, cardiac arrhythmias and heart attacks. Because of these severe adverse reactions, the Food and Drug Administration (FDA) asked responsible companies to stop selling ephedra products in December 2003. The FDA prohibited the sale of these products in April 2004. Unfortunately, Nicole Shaw ingested "Stacker 2" prior to the FDA ban but at a time when Defendant NVE was well aware of its product's dangerous effects and misrepresented and concealed the same.

## II.   PARTIES

3. That Plaintiff Nicole Shaw is a resident and citizen of the State of Missouri.

4. That Defendant N.V.E., Inc. a/k/a N.V.E. Pharmaceuticals, Inc. (hereinafter "NVE") is and at all times mentioned herein was a foreign corporation organized and existing according to the laws of the State of New Jersey licensed to do business in the State of Missouri and is in the business of the formulation, manufacture and distribution of various weight loss products including the product "Stacker 2" which is the subject of this action and Defendant NVE manufactured and/or distributed the Stacker 2 product which was sold to Plaintiff.

5. That Defendant Jim Stricklin is a sole proprietor of a business named Stricklin C Store and is in the business and distribution of weight loss products in the State of Missouri, including the sale or distribution of the product "Stacker 2" which is the subject of this action and Defendant Jim Stricklin sold Stacker 2 to Plaintiff.

6. That Defendant CB Distributors, Inc. is an Illinois corporation and Is in the business of distributing various weight loss products, including the product "Stacker 2" which is the subject of this action and Defendant CB Distributors, Inc. distributed and/or sold Stacker 2 which was sold to Plaintiff.

### III.   JURISDICTION

7. That Defendant NVE has actively engaged in distributing, marketing and selling products in the State of Missouri at all relevant times herein, and therefore, Defendant NVE has submitted itself to the personal jurisdiction of Missouri based on its conduct.

### IV.   FACTUAL BACKGROUND

8. That after ingesting Defendant NVE's product, Stacker 2, on or about December 7, 2002, Plaintiff Nicole Shaw suffered a stroke.

9. The Stacker 2 had been designed, manufactured, marketed and distributed by Defendant NVE as an "herbal dietary supplement".

10. That the product, Stacker 2, was formulated, manufactured, marketed, sold and/or distributed, with among other things, the ingredients Ma Huang and Ephedra, substances that have unreasonably dangerous propensities including causing stroke, vascular collapse and heart attack, after human consumption.

11. Ma Huang contains ephedrine, as well as other Ephedra group alkaloids including norephedrine, pseudoephedrine, methylephedrine and norpseudoephedrine. The ephedrine

alkaloids are sympathomimetic amines which affect the cardiovascular system by increasing blood pressure and heart rate, and also act as central nervous system stimulants.

12. Norephedrine, one of the Ephedra group alkaloids, is a chemical component of phenylpropsnolamine [PPA]. PPA is a synthetic sympathomimetic amine that was used in many over-the counter weight loss medications. PPA was withdrawn from the United States market by the Food and Drug Administration following an October, 2000 study published in the New England Journal of Medicine. The study indicated that PPA caused a statistically significant increased risk of negative side effects.

13. Since 1983, the FDA has prohibited the marketing of over-the-counter drugs containing PPA or synthetic ephedrine in combination with caffeine due to the adverse health effects. Stacker 2 contained an herbal source of both ephedrine and caffeine, therefore it provided the same pharmacological agents as those over-the-counter drugs banned by the FDA.

14. The December 21, 2000 edition of the New England Journal of Medicine reported the adverse events of consuming herbal Ephedra products. The negative events reported included heart attacks, strokes, and seizures.

15. In October, 2002 the American Medical Association issued a paper encouraging the FDA to remove dietary supplements that contained ephedrine alkaloids from the United States market because the risks outweighed the benefits.

16. On February 6, 2004 the FDA prohibited the sale of dietary supplements containing ephedrine alkaloids and advised consumers to discontinue use. On April 12, 2004 the prohibition was put into effect.

17. The American Heart Association has agreed in a public announcement that dietary supplements containing Ephedra should be removed from the market.

18. The National Institutes of Health guidelines for the treatment of obesity state that herbal preparations, including Ephedra-containing products, are not recommended as part of a weight-loss program.

19. That Defendant NVE purposefully downplayed and understated the health hazards and risks associated with Stacker 2. In fact, through promotional literature and event testimonials from users of Stacker 2, Defendant NVE encouraged the belief that there were no serious side effects, complications and/or health hazards or risks, and that this product was safe for human consumption.

20. Much of the truth is now known about Stacker 2 and the truth is that consumption of the product involves serious risks. Stacker 2 can raise the blood pressure, increase the heart rate, and can cause seizures, strokes, brain injury, heart failure and sudden death. Defendant NVE did not adequately test for these potential adverse effects before promoting Stacker 2 for widespread use, but learned of these potential adverse effects before Plaintiff took Stacker 2. Instead of pulling Stacker 2 from the market, Defendants kept selling the product and allowed Plaintiff to take Stacker 2 and suffer a stroke.

21. Because of the irreversible and life-threatening side effects caused by ephedra-containing products such as Stacker 2, the federal government was prompted to hold hearings on the subject. As a result of these hearings, the FDA banned the use of ephedra in the manufacture of any dietary supplement products.

## V.    CAUSES OF ACTION

### COUNT I
### STRICT PRODUCT LIABILITY
### (AGAINST ALL DEFENDANTS)

22.    Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1-21 as if fully set forth herein.

23.    That on or about December 7, 2002, Plaintiff purchased the product Stacker 2 at the Stricklin C Store in Ironton, Missouri.

24.    That thereafter, Plaintiff ingested several capsules of Stacker 2 suffering a massive stroke and has been disabled ever since.

25.    That Defendants knew or should have known that dietary supplements containing Ma Huang and/or ephedrine in the quantities contained in Stacker 2 were unreasonably dangerous to consumers.

26.    That at the time of the formulation, manufacture, distribution, and sale of the product Stacker 2 and at the time that it was sold to Plaintiff, it was defective and unreasonably dangerous, in the following respects:

a)  The product contained Ma Huang and Ephedra which are substances that have known propensities to cause stroke, vascular collapse and heart attack:

b)  That the product was not sufficiently tested before being released on the market for human consumption;

c)  That the amount or dose of Ma Huang was not tested before incorporation in the formulation of the product Stacker 2; and

d)  That the amount or dose of Ephedra was not tested before incorporation in the formulation of the product Stacker 2.

27. That the packaging utilized with the Stacker 2 product did not sufficiently warn the consuming public that the product contained Ma Huang and Ephedra which have the propensity to cause stroke, vascular collapse and/or heart attack.

28. That said dangerous and defective conditions in the Stacker 2 product existed at the time that the product was delivered by the manufacturer and distributor and at the time that Defendant Jim Stricklin sold and/or distributed the Stacker 2 to Plaintiff, and at the time of the occurrence, December 7, 2002, the Stacker 2 product was in substantially the same condition as when manufactured, distributed and/or sold.

29. That the Stacker 2 product ingested by Plaintiff was being used in the manner reasonably anticipated on December 7, 2002. Further, it was reasonably anticipated by Defendant that the product would be ingested by humans after being placed in the stream of commerce.

30. That as a direct result of the defective and unreasonably dangerous condition of the Stacker 2 product, Plaintiff sustained injuries including a stroke which has caused mental slowness, brain damage, diminished capacity for speech, motor weakness in her extremities, facial palsy, and other neurologic injuries.

31. That as a direct result of the Stacker 2 product being in a defective and unreasonably dangerous condition as aforesaid, Plaintiff has been caused to undergo extensive medical therapy, physical therapy and treatment and incurred expenses for said treatment and will be caused to undergo treatment in the future and that Plaintiff has been caused to suffer loss of earnings and will suffer from a diminishment in her earning capacity.

## COUNT II
## NEGLIGENCE
## (AGAINST ALL DEFENDANTS)

32. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1-21 as if fully set forth herein.

33. That at the time of the occurrence on December 7, 2002, Plaintiff was using the Stacker 2 product in a manner reasonably anticipated by Defendants.

34. That the injuries to Plaintiff on December 7, 2002 were directly and proximately caused by the negligence of Defendants NVE, Inc., NVE Pharmaceuticals, Inc., Jim Stricklin d/b/a Stricklin C Store, and CB Distributors, Inc., in the following respects:

   a) Defendants negligently and carelessly failed to warn Plaintiff of the dangerous propensities of the Stacker 2 product;

   b) Defendants negligently and carelessly failed to warn the public at large about the dangerous propensities of the Stacker 2 product;

   c) Defendants negligently and carelessly failed to formulate, manufacture, sell and/or distribute the Stacker 2 product by eliminating the dangerous ingredients, namely Ma Huang and Ephedra;

   d) Defendants negligently and carelessly failed to formulate and manufacture the Stacker 2 product in such a manner as would eliminate the dangerous ingredients, namely Ma Huang and Ephedra from inclusion in the product; and

   e) Defendants negligently and carelessly failed to perform tests on the Stacker 2 product to determine its safety.

35. That as a direct result of Defendants' negligence, as aforesaid, Plaintiff sustained injuries which included infarction of blood vessels in her brain, brain damage, mental slowness, diminishment of the ability to communicate, motor weakness in her extremities, along with other neurologic injuries.

36. That as a result of the Defendants' negligence, as aforesaid, Plaintiff has been caused to undergo extensive medical therapy, physical therapy and treatment and incurred

expenses for said treatment and will be caused to undergo treatment in the future, and Plaintiff has been caused to loss of earnings and a diminishment of earning capacity.

## COUNT III
## BREACH OF IMPLIED WARRANTY
## (AGAINST ALL DEFENDANTS)

37. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1-21 as if fully set forth herein.

38. That Defendants NVE, Inc., and NVE Pharmaceuticals, Inc. formulated, manufactured, marketed, sold, and/or distributed the Stacker 2 product that was ultimately purchased by Plaintiff.

39. That Defendant Jim Stricklin d/b/a Stricklin C store marketed, sold and/or distributed the Stacker 2 product that was ultimately purchased by Plaintiff.

40. That Defendant CB Distributors, Inc. sold and/or distributed the Stacker 2 product that was ultimately purchased by Plaintiff.

41. That at the time of the sale of the product Stacker 2, Defendants knew or should have known the use for which the product would be purchased, knew or should have known that the product would be ingested by human beings including Plaintiff, and knew or should have known that the product contained the ingredients Ma Huang and Ephedra which have dangerous propensities, including stroke, vascular collapse and heart attack.

42. That Plaintiff reasonably relied on Defendants' judgment that the Stacker 2 product was fit for the use to which it was intended, specifically weight loss.

43. That at the time the Stacker 2 product was sold by Defendants, it was not fit for such uses for the reasons described previously, incorporated herein by reference.

44. That as a direct result of the Stacker 2 product being unfit for the uses for which it was intended, Plaintiff sustained the aforementioned injuries due to her ingestion of the product.

### COUNT IV
### PUNITIVE DAMAGES
### (AGAINST ALL DEFENDANTS)

45. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1-21 as if fully set forth herein.

46. That Defendant NVE formulated, manufactured, marketed, distributed and/or sold and Defendant Jim Stricklin d/b/a Stricklin C Store sold and/or distributed to the general public a dietary supplement (Stacker 2) that was defective, dangerous and hazardous, and that included an ingredients Ma Huang and Ephedra which were known to cause stroke, vascular collapse and heart attack and breached warranties of fitness for a particular purpose.

47. As a direct result, Defendants NVE and Jim Stricklin d/b/a Stricklin C Store actions and inactions, Plaintiff sustained serious and permanent injuries as a result of her ingestion of the Stacker 2 product.

48. That at the time, Defendant NVE formulated, manufactured, marketed, distributed and/or sold and Defendant Jim Stricklin d/b/a Stricklin C Store sold and/or distributed the Stacker 2 product, Defendants knew or should have known that the ingredients of Stacker 2, Ma Huang and Ephedra, were unsafe and hazardous in that they had the propensity to cause stroke, vascular collapse and heart attack.

49. That Defendants recklessly, willfully, intentionally, and with a reckless disregard of the possible consequences actively formulated, manufactured, sold, marketed and/or distributed said product to the public without providing appropriate warnings to the public of the existence of said dangers and hazards and without remedying said dangers and hazards.

50. That Defendants' conduct as above alleged was willful, intentional, wanton, reflects a reckless disregard of the possible results to the Plaintiff and to the public as a whole and Plaintiff is thereby entitled to exemplary and punitive damages against Defendants.

## COUNT V
### MISSOURI MERCHANDISING PRACTICES ACT
### (AGAINST DEFENDANT NVE)

51. Plaintiff realleges and incorporates by reference each and every allegation in Paragraphs 1-21 as if fully set forth herein.

52. Count V is brought pursuant to Mo. Ann. Stat. §§ 407.020 and 407.025 (2004) in that Defendant NVE, individually and acting by and through its actual or apparent agents, engaged in one or more of the following acts, methods or practices of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression or omission of material fact by:

   a) Failing to disclose that the dietary supplement, Stacker 2, contained herbal sources of ephedrine, therefore providing the same pharmacological agents as those over-the-counter drugs banned by the FDA and that they proximately caused health problems;

   b) Concealing the known and potential health risks, including heart attacks, strokes, and seizures;

   c) Omitting, suppressing, and concealing that Stacker 2 was not safe, and that ingestion of dietary supplements containing Ma Huang and Ephedra were associated with the health problems in preceding paragraphs set forth herein; and

   d) Misrepresenting that Stacker 2 safe despite that Defendant NVE knew or should have known of reports of various health problems associated with the ingestion of herbal sources of Ephedra found in Stacker 2, and that Stacker 2 was not safe.

53. The aforesaid conduct of Defendant NVE showed a complete indifference to or a conscious disregard to the safety and well-being of persons, including the Plaintiff and was

knowingly in violation of Mo. Ann. Stat. §§ 407.020 and 407.025 (2004), Missouri's Merchandising Practices Act, thus entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendants NVE, Inc. a/k/a NVE Pharmaceuticals, Inc., Jim Stricklin d/b/a Stricklin C Store, and CB Distributors, Inc., in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) together with her costs herein expended.

CERVANTES & ASSOCIATES

_/s/ Leonard P. Cervantes_
Leonard P. Cervantes - #25043
Phillip A. Cervantes - #44742
Jennifer Suttmoeller - #49910
1007 Olive Street, 4th Floor
St. Louis, MO 63101
Attorneys for Plaintiff Nicole Shaw

| B 104 (Rev. 2/92) | ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| NICOLE SHAW | N.V.E., INC. A/K/A N.V.E PHARMACEUTICALS, INC., JIM STRICKLIN D/B/A STRICKLIN C STORE, and CB DISTRIBUTORS, INC. |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Cervantes & Associates<br>1007 Olive Street, 4th Floor<br>St. Louis, MO 63101   314-621-6558 | Wasserman, Jurista & Stolz<br>225 Millburn Avenue, Suite 207<br>Millburn, NJ 07041 |

**PARTY** (Check one box only)   ☐ 1 U.S. PLAINTIFF   ☐ 2 U.S. DEFENDANT   ☒ 3 U.S. NOT A PARTY

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Personal injury action alleging damages from ingestion of Defendants ephedra-containing product, Stacker 2.

### NATURE OF SUIT
(Check the one most appropriate box only.)

☒ 454  To Recover Money or Property
☐ 435  To Determine Validity, Priority, or Extent of a Lien or Other Interest in Property
☐ 458  To obtain approval for the sale of both the interest of the estate and of a co-owner in property
☐ 424  To object or to revoke a discharge 11 U.S.C. § 727

☐ 455  To revoke an order of confirmation of a Chap. 11, Chap. 12, or Chap. 13 Plan
☐ 426  To determine the dischargeability of a debt 11 U.S.C. § 523
☐ 434  To obtain an injunction or other equitable relief
☐ 457  To subordinate any allowed claim or interest except where such subordination is provided in a plan

☐ 456  To obtain a declaratory judgment relating to any of foregoing causes of action
☐ 459  To determine a claim or cause of action removed to a bankruptcy court
☐ 498  Other (specify)

| ORIGIN OF PROCEEDINGS (Check one box only.) | ☒ 1 Original Proceeding | ☐ 2 Removed Proceeding | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another Bankruptcy Court | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 |
|---|---|---|---|---|---|

| DEMAND<br>$ 75,000 + | OTHER RELIEF SOUGHT<br>Punitive Damages | ☒ JURY DEMAND<br>Check only if demanded in complaint |
|---|---|---|

**BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES**

| NAME OF DEBTOR<br>N.V.E., Inc. | BANKRUPTCY CASE NO.<br>05-35692 (NLW) |
|---|---|
| DISTRICT IN WHICH CASE IS PENDING<br>New Jersey | DIVISIONAL OFFICE | NAME OF JUDGE<br>Novalyn L. Winfield |

**RELATED ADVERSARY PROCEEDING (IF ANY)**

| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
|---|---|---|
| DISTRICT | DIVISIONAL OFFICE | NAME OF JUDGE |

**FILING FEE** (Check one box only.)   ☒ FEE ATTACHED   ☐ FEE NOT REQUIRED   ☐ FEE IS DEFERRED

| DATE<br>8/25/06 | PRINT NAME<br>Leonard P. Cervantes | SIGNATURE OF ATTORNEY (OR PLAINTIFF) |
|---|---|---|